# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **CASEY HOOD, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-235-SDD-RLB** |
| **WATER TREATMENT AND CONTROLS COMPANY** | **CONSOLIDATED WITH:**<br>**NO. 16-256-SDD-RLB**<br>**NO. 16-255-SDD-RLB** |
| | **Document pertains to:**<br>**NO. 16-256-SDD-RLB** |

## <u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on September 23, 2016.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **CASEY HOOD, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-235-SDD-RLB** |
| **WATER TREATMENT AND CONTROLS COMPANY** | **CONSOLIDATED WITH:**<br>**NO. 16-256-SDD-RLB**<br>**NO. 16-255-SDD-RLB** |
| | **Document pertains to:**<br>**NO. 16-256-SDD-RLB** |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is Plaintiffs' Motions to Remand filed on May 20, 2016 (R. Doc. 19).[1] The Motion is opposed. (R. Doc. 26).

### I.      Background

On March 24, 2016, Plaintiffs[2] initiated this class action in the 23rd Judicial District Court, Ascension Parish, Louisiana, naming as defendant People's Water Service Company of Maryland, Inc. d/b/a Peoples Water Service of Donaldsonville. (No. 16-256, R. Doc. 1-2, "Petition").  Plaintiffs subsequently amended the Petition to name Water Treatment & Controls Company ("Defendant") as the correct defendant. (R. Doc. 52).

In the Petition, Plaintiffs allege that on March 22, 2016, "beginning at approximately 4:00 p.m., the Louisiana Department of Health and Hospitals notified [Defendant] to alter the treatment of drinking water because elevated levels of chlorine dioxide were discovered in the

---

[1] Unless otherwise noted, all record citations pertain to the lead case *Casey Hood, Et. Al. v. Water Treatment and Controls Company*, No. 16-235-SDD-RLB.
[2] The six Plaintiffs named in the Petition are: Kim Geason, Barbara Parker, Ola Mae Duncan, Dajonna Batiste, Ann Stevenson, and Catina Price Smith.

treatment system," and that later in the evening the Mayor of Donaldsonville declared a state of emergency. (Petition, ¶ 7).  Plaintiffs allege that Defendant "failed to warn [them] and those similarly situated of test result readings above the acceptable level [for chlorine dioxide] from approximately September 2015 – March 2016." (Petition, ¶ 8).  Plaintiffs allege that "[a]s it stands, the water supplied by [Defendant] is not safe to consume in any manner, by drinking and/or using in cooking" and, as a proximate result, Plaintiffs and putative class members "have been forced to use bottled water and have therefore incurred damages in connection with obtaining water." (Petition, ¶ 16).

Plaintiffs further allege that "the [purported] class consists of those persons and/or business entities receiving water distribution services from [Defendant] and those persons whom, although not a direct customer of [Defendant], ingested or were affected by the events" described in the Petition. (Petition, ¶ 21).  Plaintiffs define the "geographic boundaries of the class" as consisting of [Defendant's] "water distribution network, generally consisting of Donaldsonville, Louisiana." (Petition, ¶ 21).  Plaintiffs seek the following general categories of damages: (a) the cost of obtaining another source for water; (b) inconvenience; (c) fear and fright; (d) mental anguish; (e) discomfort; (f) pain and suffering; (g) emotional distress; (h) medical and pharmaceutical costs; and (i) any other damages to be proven at the trial. (Petition, ¶ 18).

On April 21, 2016, Defendant removed this action, alleging that the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) over this action or, in the alternative, that this Court has jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). (No. 16-256, R. Doc. 1).

On May 20, 2016, Plaintiffs filed the instant Motion for Remand for lack of subject matter jurisdiction. (R. Doc. 19).  The sole issue raised in the motion is whether the amount in

controversy is sufficient to support subject matter jurisdiction under 28 U.S.C. § 1332(a) or 28 U.S.C. § 1332(d).

## II.     Arguments of the Parties

Plaintiffs contend that the allegations in the Petition are insufficient to support a finding that the amount in controversy is "facially apparent" with regard to both traditional diversity and CAFA jurisdiction, and Defendant has not submitted any additional facts in controversy indicating that the amount in controversy is otherwise satisfied. (R. Doc. 19-1 at 4-7).  Plaintiffs state that "[a]t most, the injuries described in the [Petition] involve minor medical problems, such as headaches, nausea, and skin/eye irritation, most lasting less than a day, inconvenience, cost of bottled water, and generalized fear/fright." (R. Doc. 19-1 at 8).  With regard to traditional diversity jurisdiction, Plaintiffs argue that Defendant has not established that the alleged general categories of damages have satisfied the $75,000 threshold required for an individual plaintiff's claims. (R. Doc. 19-1 at 9-10).  With regard to CAFA jurisdiction, Plaintiff argues that the total purported class is approximately 7,660 individuals and, in light of the allegations, it is not facially apparent that on average each individual has more likely than not put the average damage award of $653 into controversy that would be required to reach the $5,000,000 threshold for CAFA jurisdiction. (R. Doc. 19-1 at 10-14).

In opposition, Defendant highlights that Plaintiffs "explicitly seek multiple categories and significant damages without any limitations as to only certain members of the class." (R. Doc. 26 at 4).  Defendant does not argue that the amount in controversy requirement is satisfied with regard to traditional diversity jurisdiction.  Defendant argues that the purported class consists of at least 9,537 individuals when serviced portions of Ascension Parish outside of the city limits of Donaldsonville are considered. (R. Doc. 26 at 5).  Defendant argues that various awards upheld

by state appellate courts demonstrate that the CAFA threshold is facially apparent when inconvenience damages, personal injury damages, business losses, and remediation of Plaintiffs' property are taken into account. (R. Doc. 26 at 5-9).  Defendant alternatively seeks leave to conduct jurisdictional discovery. (R. Doc. 26 at 9).

## III.    Law and Analysis

### A.    Legal Standards for Removal

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a).  Subject matter jurisdiction must exist at the time of removal to federal court, based on the facts and allegations contained in the complaint. *St. Paul Reinsurance Co., Ltd. V. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) ("jurisdictional facts must be judged as of the time the complaint is filed"). Remand is proper if at any time the court lacks subject matter jurisdiction. *See* 28 U.S.C. § 1447(c).  The removal statute, 28 U.S.C. § 1441, is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand. *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007).

### B.    Diversity Jurisdiction

Where a case is removed on the basis of diversity jurisdiction, the defendant must show "(1) complete diversity of the parties and (2) an amount-in-controversy that exceeds $75,000." *Felton v. Greyhound Lines, Inc.*, 324 F.3d 771, 773 (5th Cir. 2003) (citing 28 U.S.C. § 1332(a)). Generally, the "potential recoveries of class members may not be aggregated to satisfy the § 1332(a) amount-in-controversy requirement." *Gene And Gene LLC v. BioPay LLC*, 541 F.3d 318, 325 n.6 (5th Cir. 2008) (citing *Grant v. Chevron Phillips Chem Co.*, 309 F.3d 864, 873 (5th Cir. 2002)).

The burden of proof is on the removing defendant to establish that the amount in controversy has been satisfied. *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999). In its Notice of Removal, Defendant asserts that the jurisdictional amount for diversity jurisdiction is satisfied based on the aggregated damages of the Plaintiffs and putative class members. (No. 16-256, R. Doc. 1 at 3-5).

In opposing remand, Defendant raises no argument in support of its assertion, upon removal, that the Court has subject matter jurisdiction over this action in light of 28 U.S.C. § 1332(a). In particular, Defendant raises no argument supporting a finding that the $75,000 jurisdictional amount is satisfied with regard to any damages sought by an individual plaintiff. Accordingly, the Court finds that Defendant has effectively abandoned its assertion that the amount in controversy requirement is satisfied with regard to traditional diversity jurisdiction and has failed to meet its burden of establishing this basis for jurisdiction.

### C.    CAFA Jurisdiction

CAFA expanded federal district courts' original jurisdiction to include "'class actions' and 'mass actions'" in which there is minimal diversity and the aggregate amount in controversy exceeds $5 million. *Mississippi ex rel. Hood v. AU Optronics Corp.*, 134 S. Ct. 736, 739-40 (2014). Under CAFA, federal diversity jurisdiction is conferred over class actions where (1) the number of individuals in the proposed class exceeds 100; (2) minimal diversity of citizenship exists; *i.e.* at least one plaintiff and one defendant are from different states, and (3) the amount in controversy, exclusive of interests and costs, is greater than $5,000,000. 28 U.S.C. § 1332(d), (5)(B); *see Nolan v. Exxon Mobil Corp.*, No. 13-439, 2013 WL 6194621, at *2 (M.D. La. Nov. 26, 2013).

Plaintiffs concede that the 100-member and minimal diversity requirements are satisfied. (R. Doc. 19-1 at 2). There is no dispute that the potential number of class members exceeds the 100 member threshold required for CAFA jurisdiction. (No. 16-256, R. Doc. 1 at 5-6). There is further no dispute that there is complete diversity, and therefore minimal diversity, because Plaintiffs are citizens of Louisiana and Defendant is a citizen of Maryland and Florida. (No. 16-256, R. Doc. 1 at 6-7). Accordingly, the sole issue is whether the amount in controversy requirement is satisfied. Based on the record, the Court concludes that Defendant has satisfied its burden of establishing the amount in controversy requirement for CAFA jurisdiction.

Claims of individual class members are to be aggregated to determine whether the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs. 28 U.S.C. § 1332(d)(6); *Frazier v. Pioneer Americas LLC*, 455 F.3d 542 (5th Cir. 2006). The defendant must prove by a preponderance of the evidence that the amount in controversy equals or exceeds the jurisdictional amount. *Perritt v. Westlake Vinyls Co., L.P.*, 562 F. App'x. 228, 231 (5th Cir. 2014). As with proving that the amount in controversy requirement is satisfied with traditional diversity, "a defendant seeking to sustain removal may follow either of two tracks: (1) Adduce summary judgment evidence of the amount in controversy, or (2) demonstrate that, from the class plaintiffs' pleadings alone, it is 'facially apparent' that CAFA's amount in controversy is met." *Berniard v. Dow Chem. Co.*, 481 F. App'x 859, 862 (5th Cir. 2010) (citing *De Aguilar v. Boeing Co.*, 11 F.3d 55 (5th Cir. 1993); *Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 850 (5th Cir. 1999)). "The removing party's burden is to show not only what the stakes of the litigation *could be,* but also what they *are* given the plaintiff's actual demands." *Berniard*, 481 F. App'x at 862 (quoting *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008)).

Foremost, the parties dispute how many putative class members exist.  While the Petition does not provide an estimated number of class members, it defines the class as consisting of "those persons and/or business entities receiving water distribution services from [Defendant] and those persons whom, although not a direct customer of [Defendant], ingested or were affected by the events" with a geographic boundary to include Defendant's "water distribution network, generally consisting of Donaldsonville, Louisiana." (Petition, ¶ 21).

In support of remand, Plaintiffs state that "[t]he City of Donaldsonville advised by written letter on May 9, 2016, that 2,969 sewer customers could be identified on the [Defendant's] water system based on monthly purchase of water consumption data from [Defendant] for billing purposes" (R. Doc. 19-1 at 12).  Using the American household size of 2.58 persons per household in the 2010 Census, Plaintiffs calculate that 7,660 putative class members in Donaldsonville use Defendant's water system. (R. Doc. 19-1 at 12).  In opposition, Defendant asserts that Plaintiffs fail to take into account that Defendant serves customers in Ascension Parish outside of the city limits of Donaldsonville. (R. Doc. 26 at 7).  Defendant calculates a putative class of at least 9,537 plaintiffs based on certified copies of documents from the Louisiana Department of Health and Hospitals. (R. Doc. 26 at 7; R. Doc. 26-1).[3]

Plaintiffs have defined the putative class as including all persons affected by the alleged contamination, including customers and non-customers who may live outside the city limits of Donaldsonville.  The plaintiffs' definition of putative class controls the analysis, not the defendant's characterization of the definition. *See Berniard v*, 481 F. App'x at 863-64 (aggregate amount in controversy not met where defendant "overstat[ed] the reach of the plaintiffs' petitions by improperly equating the geographic areas in which potential plaintiffs might reside with the

_____

[3] This is the only summary-judgment type evidence submitted by Defendant in support of a finding that the jurisdictional amount for CAFA is satisfied.

population of the plaintiff class itself."); *Cannon v. Dow Chem. Co.*, No. 08-1397, 2008 WL 2308897, at *3 (E.D. La. June 2, 2008) (aggregate amount in controversy not met where defendant argued entire population of St. Charles Parish should be considered the putative class for calculating the aggregated amount in controversy where Plaintiffs defined the putative class as including only those living on the west bank of St. Charles Parish).  Here, despite the expansive definition of the class found in the Petition, Plaintiff attempts to limit the class to those individuals residing within the city limits of Donaldsonville.  In light of the summary judgment evidence put forth by Defendant, the Court concludes that the purported class size is approximately 9,537, meaning that each plaintiff, on average, would have to put approximately $525 in controversy to reach the $5,000,000 threshold in the aggregate.

A recent Louisiana appellate court decision is nearly directly on point with regard to the calculation of "inconvenience" damages resulting from the loss of use of a local water supply. *See England v. Fifth Louisiana Levee Dist.*, 167 So.3d 1105 (La. App. 2nd Cir. 2015).  In that mass action involving a water supply contaminated by a chemical herbicide, 141 upstream plaintiffs who did not settle their claims were awarded $600 each in purely economic damages attributable to loss of water supply for a total of eight days. *Id*. at 1113.  On the basis of finding no manifest error, the appellate court upheld the trial court's award of $50 per day for "inconvenience of travel, including trips to laundry facilities, daily trips to the homes of friends for personal hygiene care and bathing, and daily trips to purchase bottled water" (including an additional two days of non-use of the available water supply in light of continued fear of use) and an award of "$100 to each plaintiff for direct expenses for the cost of additional water supplies." *Id*.

8

While instructive, the *England* decision involved "upstream" plaintiffs whose water was not contaminated and merely upheld the award of $600 as not manifestly erroneous.  Here, the Petition alleges that for some unknown period of time the water supply of all class members was contaminated.  Furthermore, the instant Petition includes commercial class members who may seek "business interruption" losses as a sub-set of "inconvenience" losses.  Given the foregoing, it is possible, if not likely, that the amount in controversy with regard to "inconvenience" damages exceeds the amount awarded in the *England* decision.  The *England* decision certainly does not preclude the Plaintiffs in this action from being awarded more than $600 with regard to their inconvenience damages.

Defendant argues that the amount in controversy requirement is satisfied using its estimated class of 9,537 members when multiplied against the $600 award in the *England* decision, which would result in the amount in controversy totaling $5,722,200. (R. Doc. 26 at 6).  While $600 may be a reasonable measure of the inconvenience damages alleged in the instant Petition, the use of a more conservative measure of potential recovery is still sufficient to determine that the Court has CAFA jurisdiction in this action.

Because they filed their Petition just two days after they were informed that the water was not safe for use, Plaintiffs do not specify the total number of days of alleged inconvenience due to unavailability of water.  Plaintiffs assert in support of their motion, however, that they were informed that the water was safe for use after approximately five days. (R. Doc. 19-1 at 14).  Defendant offers no competing time frame.  Accordingly, it is reasonable to value each inconvenience claim at five-eighths of the amount awarded in *England*, or $375.  Using Defendant's estimate of 9,537 potential plaintiffs, the aggregate claim for inconvenience would be approximately $3,576,375. To reach the jurisdictional threshold of $5,000,000, the additional

claims of the class members would have to, on average, put into controversy an additional $150 per individual class member.

Here, in addition to the inconvenience damages and costs of obtaining other sources of water discussed above, Plaintiffs seek recovery for generalized categories of various physical and mental damages: fear and fright; mental anguish; discomfort; pain and suffering; emotional distress; medical and pharmaceutical costs; and any other damages to be proven at trial. (Petition, ¶ 18). There are no supporting factual allegations in the Petition identifying the physical damages that have allegedly been sustained by the class members. In support of remand, however, Plaintiffs assert that only a "few" individuals sustained physical injuries, which were limited to brief periods of headaches, nausea, and skin/eye irritation with no accompanying medical expenses. (R. Doc. 19-1 at 8). In opposition, Defendant offers no summary judgment type evidence suggesting that any members of the purported class suffered more serious injuries.

After taking into consideration the additional allegations of physical and mental damages sought, the Court concludes that Defendant has met its burden of establishing the amount in controversy requirement. Defendant relies primarily on *Doerr v. Mobile Oil Corp.*, 935 So.2d 231 (La App. 4th Cir. 2006). (R. Doc. 26 at 7-8). In that decision, the plaintiffs alleged that they were exposed to contaminated water resulting from "over 52,000 pounds of oil and grease and other contaminants" into the Mississippi River that eventually reached their drinking water. *Id*. at 232. The appellate court upheld global awards of $500 through $2,000 for recovery of "physical, mental and/or emotional injuries, fright, inconvenience, personal and medical expenses, economic damages, and interruption of or intrusion into their personal and professional lives as a

direct consequence" of the discharges, as well as awarded $250 to plaintiffs who did not suffer any physical damages. *Id*. at 238-39.[4]

Defendant also references the decision *Anthony v. Georgia Gulf Lak Charles, LLC*, 146 So.3d 235, 254-64 (La. App. 4th Cir. 2014), but correctly notes that the individual damage awards of $10,000 through $35,500 upheld in that decision are distinguishable as they "involved exposure to airborne chemical contaminants" and the allegations of physical injuries in this action "even if proven, would [not] necessarily support awards in the tens of thousands of dollars." (R. Doc. 26 at 8-9).  The *Anthony* decision involved an "explosion and fire" at a facility resulting in the "catastrophic release" of various hazardous chemicals, including hydrochloric acid, ethylene dichloride and vinyl chloride.  *Anthony*, 146 So.3d at 244-46.  The plaintiffs suffered from a wide-range of physical maladies lasting for months and, in some cases, over a year. *Id*. at 254-64.  Other appellate decisions, however, have authorized less compelling awards where the alleged injuries are similar to those alleged by Plaintiff. *See, e.g.*, *Howard v. Union Carbide Corp.*, 50 So.3d 1251, 1256 (La. 2010) (holding that trial court's awards of $1,500 to $3,500 to plaintiffs exposed to a chemical leak were a clear abuse of discretion given that the "damages proven, such as eye, nose, and throat irritations, are not unlike the symptoms suffered by persons afflicted with common seasonal allergies . . . [and] might be characterized as mere annoyances"; reducing damages to $100 to $500); *Rivera v. United Gas Pipeline Co.*, 697 So.2d 327 (La. App. 5th Cir. 1997) (affirming jury verdicts that declined to award damages to plaintiffs

---

[4] Defendant argues that based upon the *Doerr* decision, the Court should approximate the amount of physical damages sought by each plaintiff to be $1,250, meaning that for physical injuries alone the amount in controversy should be measured at $11,921,250 (using Defendant's class total) or $9,575,000 (using Plaintiffs' class total). (R. Doc. 26 at 9-10).  The Court finds these amounts to be overstated in light of the allegations in the Petition and Defendant's lack of supporting evidence.

who as a result of exposure to natural gas suffered "minimal" injuries such as nausea and headaches).

Given the foregoing, it is reasonable to calculate the average physical damages suffered class-wide to be at least $150, which would result in the jurisdictional threshold being satisfied for CAFA jurisdiction.  While Plaintiffs assert that only a "few" individuals suffered physical damages, that post-removal assertion is inconsistent with the allegations in the Petition, which are alleged as sought by all class members.  In addition, Plaintiffs are seeking recovery for special damages regarding medical and pharmaceutical costs, which, if proven, would further support an additional award of damages.

Accordingly, the Court concludes that Defendant has met its burden of establishing that the aggregate amount in controversy requirement to support CAFA jurisdiction is satisfied.

**IV.**   **Conclusion**

Based on the foregoing,

**IT IS RECOMMENDED** the Plaintiffs' Motion to Remand (R. Doc. 19) be **DENIED**.

Signed in Baton Rouge, Louisiana, on September 23, 2016.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**