# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **CASEY HOOD, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-235-SDD-RLB** |
| **WATER TREATMENT AND CONTROLS COMPANY** | **CONSOLIDATED WITH:** <br> **NO. 16-256-SDD-RLB** <br> **NO. 16-255-SDD-RLB** |
| | **Document pertains to:** <br> **NO. 16-255-SDD-RLB** |

## <u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on September 23, 2016.

_____

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| CASEY HOOD, ET AL. | CIVIL ACTION |
| VERSUS | NO. 16-235-SDD-RLB |
| WATER TREATMENT AND CONTROLS COMPANY | CONSOLIDATED WITH:<br>NO. 16-256-SDD-RLB<br>NO. 16-255-SDD-RLB |
| | Document pertains to:<br>NO. 16-255-SDD-RLB |

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is Plaintiffs' Motion to Remand filed on July 7, 2016. (R. Doc. 35).[1]

The Motion is opposed. (R. Doc. 54).

I.      Background

On March 23, 2016, Plaintiffs[2] initiated this class action in the 23rd Judicial District

Court, Ascension Parish, Louisiana, naming as defendants Water Treatment & Controls

Company d/b/a Peoples Water System ("Water Treatment") and the City of Donaldsonville. (No.

16-255, R. Doc. 1-2, "Petition").

In the Petition, Plaintiffs allege that on March 22, 2016, "the Louisiana Department of

Health and Hospitals urged residents in the City of Donaldsonville to abstain from drinking and

cooking with water supplied to the residents" by Water Treatment "due to violations of safe

drinking water standards," namely "elevated levels of chlorine dioxide." (Petition, ¶¶ 2, 4).

---

[1] Unless otherwise noted, all record citations pertain to the lead case *Casey Hood, Et. Al. v. Water Treatment and Controls Company*, No. 16-235-SDD-RLB.
[2] The four Plaintiffs named in the Petition are: Shane Ray Smith, Jamie Denise Lee, Jeffrey Johnson, and Alexis Johnson.

Plaintiffs allege that as "a result of the exposure to the high levels of chlorine and other dangerous substances," they and others similarly situated suffered "personal injuries and symptoms, including, but not limited to throat irritation, sinus irritation, dry skin and mouth irritation due to the contaminated water," as well as "fear and fright and emotional and mental anguish." (Petition, ¶ 13).  Plaintiffs further allege that they and others similarly situated suffered "fear, anguish, discomfort and inconvenience as well as pain and suffering, emotional distress, and psychiatric and psychological damages, evacuation, shelter in place, and property damages." (Petition, ¶ 14).

Plaintiffs allege "that the [purported] class consists of those persons in or near the community of Donaldsonville, Louisiana who sustained compensable damages from the fault of defendants" as alleged in the Petition. (Petition, ¶ 17).

On July 7, 2016, Water Treatment removed this action, alleging that the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) over this action or, in the alternative, that this Court has jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). (No. 16-255, R. Doc. 1).

On May 20, 2016, Plaintiffs filed the instant Motion for Remand for lack of subject matter jurisdiction. (R. Doc. 35).  The sole issue raised in the motion is whether the amount in controversy is sufficient to support subject matter jurisdiction under 28 U.S.C. § 1332(a) or 28 U.S.C. § 1332(d).

## II.     Arguments of the Parties

Plaintiffs contend that the allegations in the Petition are insufficient to support a finding that the amount in controversy is "facially apparent" with regard to both traditional diversity and CAFA jurisdiction, and Water Treatment has not submitted any additional facts in controversy

2

indicating that the amount in controversy is otherwise satisfied. (R. Doc. 35-1 at 6-7).  Plaintiffs

state that "[a]t most, the injuries described in the [Petition] involve minor medical problems,

such as headaches, nausea, and skin/eye irritation, most lasting less than a day, inconvenience,

cost of bottled water, and generalized fear/fright." (R. Doc. 35-1 at 7).  With regard to traditional

diversity jurisdiction, Plaintiffs argue that Water Treatment has not established that the alleged

general categories of damages have satisfied the $75,000 threshold required for an individual

plaintiff's claims. (R. Doc. 35-1 at 7-9).  With regard to CAFA jurisdiction, Plaintiff argues that

the total purported class is approximately 7,660 individuals and, in light of the allegations, it is

not facially apparent that on average each individual has more likely than not put the average

damage award of $653 into controversy that would be required to reach the $5,000,000 threshold

for CAFA jurisdiction. (R. Doc. 35-1 at 9-12).

    In opposition, Water Treatment argues that given "Plaintiffs' claims for multiple

categories of significant damages on behalf of all purported class members clearly satisfy the

jurisdictional threshold" for CAFA jurisdiction. (R. Doc. 54 at 4).  Water Treatment does not

argue that the amount in controversy requirement is satisfied with regard to traditional diversity

jurisdiction.  Water Treatment argues that the purported class consists of at least 9,537

individuals when serviced portions of Ascension Parish outside of the city limits of

Donaldsonville are considered. (R. Doc. 54 at 5).  Water Treatment argues that various awards

upheld by state appellate courts demonstrate that the CAFA threshold is facially apparent when

inconvenience damages, personal injury damages, business losses, and remediation of Plaintiffs'

property are taken into account. (R. Doc. 54 at 5-6).  Water Treatment also addresses

inconsistencies with regard to Plaintiffs' assertions concerning whether the requirement for

minimal diversity between the parties is satisfied. (R. Doc. 54 at 7-9).  Water Treatment

alternatively seeks leave to conduct jurisdictional discovery. (R. Doc. 54 at 9).

### III.    Law and Analysis

#### A.    Legal Standards for Removal

A defendant may remove "any civil action brought in a State court of which the district

courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a).  Subject matter

jurisdiction must exist at the time of removal to federal court, based on the facts and allegations

contained in the complaint. *St. Paul Reinsurance Co., Ltd. V. Greenberg*, 134 F.3d 1250, 1253

(5th Cir. 1998) ("jurisdictional facts must be judged as of the time the complaint is filed").

Remand is proper if at any time the court lacks subject matter jurisdiction. *See* 28 U.S.C. §

1447(c).  The removal statute, 28 U.S.C. § 1441, is strictly construed and any doubt as to the

propriety of removal should be resolved in favor of remand. *Gasch v. Hartford Acc. & Indem.*

*Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007).

#### B.    Diversity Jurisdiction

Where a case is removed on the basis of diversity jurisdiction, the defendant must show

"(1) complete diversity of the parties and (2) an amount-in-controversy that exceeds $75,000."

*Felton v. Greyhound Lines, Inc.*, 324 F.3d 771, 773 (5th Cir. 2003) (citing 28 U.S.C. § 1332(a)).

Generally, the "potential recoveries of class members may not be aggregated to satisfy the §

1332(a) amount-in-controversy requirement." *Gene And Gene LLC v. BioPay LLC*, 541 F.3d

318, 325 n.6 (5th Cir. 2008) (citing *Grant v. Chevron Phillips Chem Co.*, 309 F.3d 864, 873 (5th

Cir. 2002)).

The burden of proof is on the removing defendant to establish that the amount in

controversy has been satisfied. *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999).

In its Notice of Removal, Water Treatment asserts that the jurisdictional amount for diversity jurisdiction is satisfied based on the aggregated damages of the Plaintiffs and putative class members. (No. 16-255, R. Doc. 1 at 2-4).

In opposing remand, Water Treatment raises no argument in support of its assertion, upon removal, that the Court has subject matter jurisdiction over this action in light of 28 U.S.C. § 1332(a).  In particular, Water Treatment raises no argument supporting a finding that the $75,000 jurisdictional amount is satisfied with regard to any damages sought by an individual plaintiff. Accordingly, the Court finds that Water Treatment has effectively abandoned its assertion that the amount in controversy requirement is satisfied with regard to traditional diversity jurisdiction and has failed to meet its burden of establishing this basis for jurisdiction.

### C.    CAFA Jurisdiction

CAFA expanded federal district courts' original jurisdiction to include "'class actions' and 'mass actions'" in which there is minimal diversity and the aggregate amount in controversy exceeds $5 million. *Mississippi ex rel. Hood v. AU Optronics Corp.*, 134 S. Ct. 736, 739-40 (2014).  Under CAFA, federal diversity jurisdiction is conferred over class actions where (1) the number of individuals in the proposed class exceeds 100; (2) minimal diversity of citizenship exists; *i.e*. at least one plaintiff and one defendant are from different states, and (3) the amount in controversy, exclusive of interests and costs, is greater than $5,000,000. 28 U.S.C. § 1332(d), (5)(B); *see Nolan v. Exxon Mobil Corp.*, No. 13-439, 2013 WL 6194621, at *2 (M.D. La. Nov. 26, 2013).

Plaintiffs concede that the 100-member and minimal diversity requirements are satisfied. (R. Doc. 35-1 at 2).  There is no dispute that the potential number of class members exceeds the 100 member threshold required for CAFA jurisdiction. (No. 16-256, R. Doc. 1 at 10).  There is

further no dispute that there is minimal diversity because Plaintiffs are citizens of Louisiana and Water Treatment is a citizen of Maryland and Florida. (No. 16-256, R. Doc. 1 at 10-11). Accordingly, the sole issue is whether the amount in controversy requirement is satisfied.  Based on the record, the Court concludes that Water Treatment has satisfied its burden of establishing the amount in controversy requirement for CAFA jurisdiction.

Claims of individual class members are to be aggregated to determine whether the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs. 28 U.S.C. § 1332(d)(6); *Frazier v. Pioneer Americas LLC*, 455 F.3d 542 (5th Cir. 2006).  The defendant must prove by a preponderance of the evidence that the amount in controversy equals or exceeds the jurisdictional amount. *Perritt v. Westlake Vinyls Co., L.P.*, 562 F. App'x. 228, 231 (5th Cir. 2014).  As with proving that the amount in controversy requirement is satisfied with traditional diversity, "a defendant seeking to sustain removal may follow either of two tracks: (1) Adduce summary judgment evidence of the amount in controversy, or (2) demonstrate that, from the class plaintiffs' pleadings alone, it is 'facially apparent' that CAFA's amount in controversy is met." *Berniard v. Dow Chem. Co.*, 481 F. App'x 859, 862 (5th Cir. 2010) (citing *De Aguilar v. Boeing Co.*, 11 F.3d 55 (5th Cir. 1993); *Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 850 (5th Cir. 1999)).  "The removing party's burden is to show not only what the stakes of the litigation *could be,* but also what they *are* given the plaintiff's actual demands." *Berniard*, 481 F. App'x at 862 (quoting *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008)).

Foremost, the parties dispute how many putative class members exist.  While the Petition does not provide an estimated number of class members, Plaintiffs asserts "that the [purported] class consists of those persons in or near the community of Donaldsonville, Louisiana who

6

sustained compensable damages from the fault of defendants" as alleged in the Petition. (Petition, ¶ 17).

In support of remand, Plaintiffs state that "[t]he City of Donaldsonville advised by written letter on May 9, 2016, that 2,969 sewer customers could be identified on [Water Treatment's] water system based on monthly purchase of water consumption data from [Water Treatment] for billing purposes" (R. Doc. 35-1 at 10).  Using the American household size of 2.58 persons per household in the 2010 Census, Plaintiffs calculate that 7,660 putative class members in Donaldsonville use Water Treatment's water system. (R. Doc. 35-1 at 10).  In opposition, Water Treatment asserts that Plaintiffs fail to take into account that Water Treatment serves customers in Ascension Parish outside of the city limits of Donaldsonville. (R. Doc. 54 at 5).  Water Treatment calculates a putative class of at least 9,537 plaintiffs based on certified copies of documents from the Louisiana Department of Health and Hospitals. (R. Doc. 54 at 5; R. Doc. 26-1).[3]

Plaintiffs have defined the putative class as including all persons who sustained compensable damages resulting from the alleged contamination, including customers and non-customers who may live outside the city limits of Donaldsonville.  The plaintiffs' definition of putative class controls the analysis, not the defendant's characterization of the definition. *See Berniard v*, 481 F. App'x at 863-64 (aggregate amount in controversy not met where defendant "overstat[ed] the reach of the plaintiffs' petitions by improperly equating the geographic areas in which potential plaintiffs might reside with the population of the plaintiff class itself."); *Cannon v. Dow Chem. Co.*, No. 08-1397, 2008 WL 2308897, at *3 (E.D. La. June 2, 2008) (aggregate amount in controversy not met where defendant argued entire population of St. Charles Parish

---

[3] This is the only summary-judgment type evidence submitted by Water Treatment in support of a finding that the jurisdictional amount for CAFA is satisfied.

should be considered the putative class for calculating the aggregated amount in controversy where Plaintiffs defined the putative class as including only those living on the west bank of St. Charles Parish).  Here, despite the expansive definition of the class found in the Petition, Plaintiff attempts to limit the class to those individuals residing within the city limits of Donaldsonville. In light of the summary judgment evidence put forth by Water Treatment, the Court concludes that the purported class size is approximately 9,537, meaning that each plaintiff, on average, would have to put approximately $525 in controversy to reach the $5,000,000 threshold in the aggregate.

A recent Louisiana appellate court decision is nearly directly on point with regard to the calculation of "inconvenience" damages resulting from the loss of use of a local water supply. *See England v. Fifth Louisiana Levee Dist.*, 167 So.3d 1105 (La. App. 2nd Cir. 2015).  In that mass action involving a water supply contaminated by a chemical herbicide, 141 upstream plaintiffs who did not settle their claims were awarded $600 each in purely economic damages attributable to loss of water supply for a total of eight days. *Id*. at 1113.  On the basis of finding no manifest error, the appellate court upheld the trial court's award of $50 per day for "inconvenience of travel, including trips to laundry facilities, daily trips to the homes of friends for personal hygiene care and bathing, and daily trips to purchase bottled water" (including an additional two days of non-use of the available water supply in light of continued fear of use) and an award of "$100 to each plaintiff for direct expenses for the cost of additional water supplies." *Id*.

While instructive, the *England* decision involved "upstream" plaintiffs whose water was not contaminated and merely upheld the award of $600 as not manifestly erroneous.  Here, the Petition alleges that for some unknown period of time the water supply of all class members was

8

contaminated.  Furthermore, the instant Petition includes commercial class members who may seek "business interruption" losses as a sub-set of "inconvenience" losses.  Given the foregoing, it is possible, if not likely, that the amount in controversy with regard to "inconvenience" damages exceeds the amount awarded in the *England* decision.  The *England* decision certainly does not preclude the Plaintiffs in this action from being awarded more than $600 with regard to their inconvenience damages.

Water Treatment argues that the amount in controversy requirement is satisfied using its estimated class of 9,537 members when multiplied against the $600 award in the *England* decision, which would result in the amount in controversy totaling $5,722,200. (R. Doc. 54 at 6 n. 19; R. Doc. 26 at 6).  While $600 may be a reasonable measure of the inconvenience damages alleged in the instant Petition, the use of a more conservative measure of potential recovery is still sufficient to determine that the Court has CAFA jurisdiction in this action.

Because they filed their Petition just one day after they were informed that the water was not safe for use, Plaintiffs do not specify the total number of days of alleged inconvenience due to unavailability of water.  Plaintiffs assert in support of their motion, however, that they were informed that the water was safe for use after approximately five days. (R. Doc. 35-1 at 12-13).  Water Treatment offers no competing time frame.  Accordingly, a conservative valuation of the inconvenience claim is five-eighths of the amount awarded in *England*, or $375.  Using Water Treatment's estimate of 9,537 potential plaintiffs, the aggregate claim for inconvenience would be approximately $3,576,375.  To reach the jurisdictional threshold of $5,000,000, the additional claims of the class members would have to, on average, put into controversy an additional $150 per individual class member.

Here, in addition to the inconvenience damages and costs of obtaining other sources of water discussed above, Plaintiffs seek recovery for generalized categories of various mental damages: "fear and fright and emotional and mental anguish" and "fear, anguish, discomfort and inconvenience as well as pain and suffering, emotional distress, and psychiatric and psychological damages." (Petition, ¶¶ 13-14).  With regard to alleged physical injuries, Plaintiffs assert that they suffered "throat irritation, sinus irritation, dry skin and mouth irritation due to the contaminated water." (Petition, ¶ 13).  In support of remand, however, Plaintiffs assert that only a "few" individuals sustained physical injuries, which were limited to brief periods of headaches, nausea, and skin/eye irritation with no accompanying medical expenses. (R. Doc. 35-1 at 7).  In opposition, Water Treatment offers no summary judgment type evidence suggesting that any members of the purported class suffered more serious injuries.

After taking into consideration the additional allegations of physical and mental damages sought, the Court concludes that Water Treatment has met its burden of establishing the amount in controversy requirement.  Water Treatment relies primarily on *Doerr v. Mobile Oil Corp.*, 935 So.2d 231 (La App. 4th Cir. 2006). (R. Doc. 54 at 6 n. 20; R. Doc. 26 at 7-8).  In that decision, the plaintiffs alleged that they were exposed to contaminated water resulting from "over 52,000 pounds of oil and grease and other contaminants" into the Mississippi River that eventually reached their drinking water. *Id*. at 232.  The appellate court upheld global awards of $500 through $2,000 for recovery of "physical, mental and/or emotional injuries, fright, inconvenience, personal and medical expenses, economic damages, and interruption of or intrusion into their personal and professional lives as a direct consequence" of the discharges, as well as awarded $250 to plaintiffs who did not suffer any physical damages. *Id*. at 238-39.[4]

---

[4] Water Treatment argues that based upon the *Doerr* decision, the Court should approximate the amount of physical damages sought by each plaintiff to be $1,250, meaning that for physical injuries alone the

Water Treatment also references the decision *Anthony v. Georgia Gulf Lak Charles, LLC*, 146 So.3d 235, 254-64 (La. App. 4th Cir. 2014), but correctly notes that the individual damage awards of $10,000 through $35,500 upheld in that decision are distinguishable as they "involved exposure to airborne chemical contaminants" and the allegations of physical injuries in this action "even if proven, would [not] necessarily support awards in the tens of thousands of dollars." (R. Doc. 54 at 6 n. 20; R. Doc. 26 at 8).  The *Anthony* decision involved an "explosion and fire" at a facility resulting in the "catastrophic release" of various hazardous chemicals, including hydrochloric acid, ethylene dichloride and vinyl chloride.  *Anthony*, 146 So.3d at 244-46.  The plaintiffs suffered from a wide-range of physical maladies lasting for months and, in some cases, over a year. *Id*. at 254-64.  Other appellate decisions, however, have authorized less compelling awards where the alleged injuries are similar to those alleged by Plaintiff. *See*, *e.g.*, *Howard v. Union Carbide Corp.*, 50 So.3d 1251, 1256 (La. 2010) (holding that trial court's awards of $1,500 to $3,500 to plaintiffs exposed to a chemical leak were a clear abuse of discretion given that the "damages proven, such as eye, nose, and throat irritations, are not unlike the symptoms suffered by persons afflicted with common seasonal allergies . . . [and] might be characterized as mere annoyances"; reducing damages to $100 to $500); *Rivera v. United Gas Pipeline Co.*, 697 So.2d 327 (La. App. 5th Cir. 1997) (affirming jury verdicts that declined to award damages to plaintiffs who as a result of exposure to natural gas suffered "minimal" injuries such as nausea and headaches).

Given the foregoing, it is reasonable to calculate the average physical damages asserted class-wide to be at least $300, which would result in the jurisdictional threshold being satisfied

---

amount in controversy should be measured at $11,921,250 (using Water Treatment's class total) or $9,575,000 (using Plaintiffs' class total). (R. Doc. 26 at 9-10).  The Court finds these amounts to be overstated in light of the allegations in the Petition and Water Treatment's lack of supporting evidence.

for CAFA jurisdiction.  While Plaintiffs assert that only a "few" individuals suffered physical

damages, that post-removal assertion is inconsistent with the allegations in the Petition, which

are alleged as sought by all class members.

Accordingly, the Court concludes that Water Treatment has met its burden of establishing

that the aggregate amount in controversy requirement to support CAFA jurisdiction is satisfied.

**IV.**      **Conclusion**

Based on the foregoing,

**IT IS RECOMMENDED** the Plaintiffs' Motion to Remand (R. Doc. 35) be **DENIED**.

Signed in Baton Rouge, Louisiana, on September 23, 2016.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**